Good morning, Your Honors, and may it please the Court, Aaron Bretscher for the Appellant Gail Vincent. I'd like to reserve two minutes for rebuttal. Every day since the District Court's erroneous ruling below, Mr. Vincent has been deprived of not only his religious freedoms, but of the opportunity for a trial on the merits of his claims. The appeal raises four claims of error, and I'm happy to answer the Court's questions about any of them, but I'm going to focus my remarks on just two, the statutory claim and the First Amendment claim. And I'd like to begin at the end with the least restrictive means test and the Turner analysis for the First Amendment claim, because I think that's where the differences between the two claims are starkest. Starting with the statutory claim, the Supreme Court announced in Holt v. Hobbs that the least restrictive means test is exceptionally demanding. And here, looking at the record, putting aside our argument that the defendants waived that ruling, the record itself is insufficient to sustain that burden. In Shakur v. Shiro, this Court said that it was doubly onerous for the moving party at summary judgment to win on least restrictive means, because they will also bear the burden of persuasion at trial on that claim. The Supreme Court in Holt, this Court in Shakur, this Court in War Soldier, they all make clear that the record has to be specific findings showing that the prison officials actually considered making an exemption for that particular plaintiff and rejected those alternatives in furtherance of a compelling state interest. That didn't happen here. If the Court has any doubts, I think that you need only look to the Carney Declaration that was submitted below. This is ER 140 through 142. This is the declaration, and if you look at the first eight paragraphs, that's the core of what was submitted here in terms of the defendant's burden. The remaining paragraphs authenticate documents about Mr. Vincent's needs. We explain extensively in the brief why that's not relevant, but we're happy to, again, answer any questions the Court has. Well, I think the record tells us that at an earlier point in time, the prison actually had a diet that would have satisfied what your client claims is required by his religion. They just don't do it anymore. That's correct, Your Honor, and it's... Which suggests, then, that it's not all that hard for them to do it if they did it in the past. It does. To be fair to defendants, Your Honor, Mr. Vincent's needs have changed in light of his medical diet. It's no longer simply adding a cup of milk to the vegan diet. He also needs now a vegan equivalent of the metabolic diet that also has fresh dairy components. But you're right, and the defendants say nothing about that either below, and Mr. Vincent put it in the record below, and they say nothing about it here. A little more troubling to me from the standpoint of your client is not the least restrictive means, but rather whether he's telling the truth about his religion. The judge below said, he refers us to these outside experts who are religious figures for the proposition that he's required to have dairy daily. The outside experts say, well, no, that's not true. And once that happens, the judge below says, well, it sounds as though he does not believe in the religion he's claiming to follow. What do we do with that? A couple of points, Your Honor. First, it is not for district courts to assess credibility at the summary judgment stage. That's an issue for trial. Well, I understand that, but these are his own witnesses. I mean, he suggested, go talk to these people. Well, a minor correction on that point, Your Honor. One of the outside ministers was one he referenced. The other, the minister in Idaho, was someone who the defendants contacted on their own. I see. And they both said the same thing. They did both say the same thing, but I would point out a couple of things. First, in Shakur, you had exactly the same thing. This was a Muslim prisoner who said that he wanted kosher meat added to satisfy his halal needs. The defendants argued, well, meat may be consistent with your religious needs, but it's not mandated. This court reversed nonetheless. Mr. Vincent is the relevant authority on his religious beliefs. And I should say, even though he says for the minister that he identified, the context matters here. If you look at the request for accommodation, it's in response to the defendant's form that says, give us the name of an outside authority who can confirm and explain this religious mandate. Religious mandate is, of course, not the test under either the statute or the First Amendment. More importantly, the hypothetical that I would suggest is one could be a member of a church in good standing. Let me come back to the mandate question. If the foreman said religious practice, would we have gotten a different answer out of the expert? No. So why do you care whether it said mandate or practice or custom or habit? Well, mandate is certainly what was argued below. The district court also decided on mandate as to the First Amendment, not as to the statutory claim. And that was error, as this court held in Shakur. The broader issue, the broader hypothetical that I would I can disagree with my minister or my priest, and not just about sports or politics, but about core subjects, about the content of my faith. And in our legal tradition, that's okay. And that's because the religious freedom that's guaranteed both by the statute and by the First Amendment is not a right primarily or exclusively of corporate or organized religion. It's the right of individuals to believe what they choose. I understand that, and you're describing the law accurately, but there comes a point at which we could have a prison full of 100 men, all of whom have their own very individual religions. And then where are we? Well, first, Your Honor, the Supreme Court confronted and rejected that exact challenge in Holt v. Hobbs, where the Arkansas prison authorities said, if we do this, there are hundreds or thousands of prisoners who we're going to have to make similar accommodations for. Yeah, that was the Beard exception. It's a much cheaper for the prison to administer that kind of a regime than it is to provide them with meals. Now, the prison does appear to offer dairy options at the commissary. Now, I didn't see whether you have challenged that those dairy options were not sufficient for his religious needs outside of the fact that he's not currently working and therefore doesn't have a prison account. Well, two points, Your Honor. First, since at least 2014, when he became completely indigent, not only no money in the account, but no income. And that's, there's no dispute in the record on that point. Is he capable of working? Is this by choice? He says that the prison won't give him a job. That was his testimony below. But separately, Mr. Vincent contends that none of the commissary options meet his religious needs. Now, I want to point out... Because it's not fresh dairy? That's correct. Now, this is a point, this is an important dispute in the case. Mr. Vincent says that the cheese bars or the Parmesan cheese that's available to him is not fresh dairy. Now, he may be wrong, as a matter of fact. His position may even be unreasonable. But that doesn't mean that he's insincere. In fact... Well, wait a minute. I think that's... I'm not saying that it's not unfavorable to you or your client. You say he may be wrong, as a matter of fact. But no, if he says this isn't fresh dairy, what he and me are saying is, this is not fresh dairy as my religion requires it. We might call it fresh, but he doesn't, and that's his religion. That's correct, Judge Fletcher. I'm not sure he made a factual mistake. That's just not how I define fresh dairy, and my religion tells me fresh dairy, and this is the definition. And that's precise... And that's precise to the point I was making, Your Honor. The Supreme Court said in Thomas v. Review Board, religious beliefs need not be logical, consistent, comprehensible. This court said the same thing in Shakur. It's simply not for courts or prison officials to determine the substantive content of a petitioner's religion. And Judge Bybee, to your concern, which I don't think I addressed about the different needs that one might have, that I think goes to burden. And the defendants here could have satisfied that if they'd put in a stronger record. But here, the record that they did assemble is objectively weaker than the one that this court said was insufficient as a matter of law in Shakur. It can't be that there's a different result in this case. Unless there are further questions from the panel, I'd like to reserve the balance of my time. Good. You've saved some time. Thank you. May it please the Court, my name is Marco Pavola, Assistant Attorney General here on behalf of the Department. This Court should affirm the District Court's order dismissing Mr. Vincent's case because the defendants have not substantially burdened the practice of his religion, nor have they treated him differently because he's a member of a protected class. Under RLUPA, it's Mr. Vincent's burden to plead a substantial burden on the exercise of his religious beliefs. He claims two distinct burdens, and both fall short, Your Honors. First, the Department's denial of Mr. Vincent's request for supplemental food items to be added to the diet does not constitute a substantial burden. The Department has no duty to provide every item that an inherent may claim to be necessary to the practice. Now, are you saying that because you don't believe this is a legitimate, sincerely held religious belief, or are you saying this is a religious belief, but is nonetheless not burdensome? Your Honor, we don't need to get to whether or not this is Mr. Vincent's sincerely held religious belief. Okay, so you're saying that for the purposes of what you're now saying, you take it as established that this is a sincerely held religious belief. For this answer, yes. And so you're saying, even though he says, my religion requires me to have fresh dairy every day, you say it's not unduly burdensome for you not to supply it. Yes, Your Honor. How can you say that? Well, by way of analogy, Your Honor, the ask is akin to a Jewish adherent saying, you need to give me matzo ball soup every day instead of just a kosher diet. That's just totally wrong. No Jew would say, you need to give it to me every day. A Jew would say, you need to give me a kosher diet. So he's saying something quite different. He's saying, my religion requires me to have fresh dairy every day, and you're not giving it to him. I believe it's the level of particularity in the ask that makes it quite different. Then you're challenging the sincerity of the religious belief. Well, Your Honor, I would say that Mr. Vincent's right is to a diet that is within the four corners of his religion that sustains him in good health. Wait, wait, wait. The four corners of his religion is defined by Mr. Vincent or is defined by somebody else? Under this analysis, under the RLUIPA posture, we should not be inquiring into the sincerity of Mr. Vincent's beliefs. OK. So it's as Mr. Vincent defines it, not as necessarily as the spiritual advisors in Florida and Idaho defined it. Then Your Honor, I would make the distinction as to mandatory versus permissive. I think Cutter at Note 8, the Cutter versus Wilkinson, the Supreme Court case at Note 8, the focus on RLUIPA is the obstructions institutional arrangements place on an inherent stability to acquire certain items. The state does not have to pay. Of course, RLUIPA was largely focused on sort of religious iconography and textbooks, not food that's part of a diet. Because the provision of iconography and other items is not part of what the prison ordinarily provides. Food is absolutely what a prison has to provide. I would, again, say that I believe the right to Mr. Vincent's right so far as a diet is articulated in Michelia versus Babbitt. That's a right to a diet within the four corners of his religion that sustains him in good health. Now, I don't believe there's anything that stands for the prospect that every item that is permissive within the religion, the department has to go out, procure, and provide that. Well, you know, you keep fighting with his definition of his religion. You can go ahead and fight that if you want to, but so long as you're saying we take the purposes of this question that he has described accurately, his sincerely held religious belief, you can't give me that answer. He says I need fresh dairy every day, and you say, well, no, you don't. How do you get there? Your Honor, I suppose there's a bit of a disconnect, again, in the understanding of what's mandatory versus permissive in the religion. Right. But he's been very clear about it. Right. He's been very clear. He says in order to worship in an appropriate way, there are certain kinds of sacrificial things that I'm going to do. I'm going to give up meat. I'm going to give up other things. I'm going to have a vegetarian diet, and as a part of that, I need to have fresh dairy. I would point to some of the case law, Your Honor, to justify, again, the idea that that particularized, that level of particularity in the request is not supported by the case law. I would point to Chief Justice Berger's concurrence in the Cruz versus Beto, cannot possibly be any constitutional legal requirement for the government to provide materials for every religion. This is a First Amendment case, and moons ago, I understand that. But the idea is that there's a diet there that does not offend his religion, that does not force him to defile himself, as is articulated in the Ashelman versus Warsaw. You just keep fighting what I'm telling you. Do you want to work on whether or not it's a sincerely held religious belief? Under RLUIPA, we should not be questioning his sincerely held religious beliefs. Then why don't you just accept for purposes of the argument today that according to Mr. Vincent, he must have dairy in his diet, or he's not following the tenets of his religion, irrespective of what the advisors in Idaho and Florida said? I'll accept that from Your Honors, and then say that Mr. Vincent is currently not working, is not a foregone conclusion that he'll never work again or have access to the commissary. Can he work? Do we know anything about this situation? Your Honor, that's not in the record. I understand you're still... We're still not sure. We're still not sure whether the items that are found in the commissary will satisfy his religious needs. But if the prison, for whatever reason, has said, no, you can't work, and therefore you have no way of acquiring outside funds, how is he supposed to do this? Your Honor, my understanding is that Mr. Vincent is currently undergoing some schooling. Maybe that type of programming is conflicting with the work, but I don't know that that's laid out properly in the record to dwell on that too far. But I will say, to the extent that milk is not milk, at ER 113, you can see the ingredients list to the milk, which is in the commissary. The only item on the ingredients list is milk, and I understand it's not fresh, and we may differ there as to what constitutes milk, but the only ingredient on the ingredients list at ER 113 is milk. And so your point is it's not fresh? I would not tell you today, Your Honor, that dried milk is fresh. You know, in Holt v. Hobbs, the Muslim prisoner there was willing to make an accommodation to the prison in terms of the length of his beard. He acknowledged that there were some safety concerns with the length of the beard, but he said he had to have some kind of a beard. Supreme Court didn't ding him by saying, oh, then you're not really Muslim because you've compromised your religion. And in some ways, Mr. Vinson has said, look, I realize I can't get it straight from the cow because the State will probably be able to show that that is a burden too far. But this is milk you're serving. Your Honor, again, without getting into the sincerity of his beliefs, some of these inconsistencies or demonstrated insincerities are still very important to this case in this posture. And that's because to get to substantial burden, Mr. Vinson does require a few inferences in his favor here because his record's a bit light too, in particular as it comes to the medical diet and whether or not that's necessary. And so in this posture, when he requires reasonable inferences to proceed and survive summary judgment, some of these inconsistencies or items that seem a little far-fetched, they make some of those inferences he requires to be unreasonable. And so that would be grounds, and I would ask the Court to think about that in affirming the District Court's dismissal of his claims. For example, he needs to prove that the diet available to him is incompatible with his health. And so what's in the record to prove that the diet cannot sustain him in good health? Again, that's the right in McKellar v. Babbitt, a diet that keeps him in good health. And in the briefing, opposing counsel points to ER-95, ER-124. ER-95 is Mr. Vinson self-diagnosing chronic hypertension, giving his summary of the best medical evidence available. And ER-124 is a health status report recommending that Mr. Vinson receive the health diet. Of course, it's just a recommendation. It's in the record that Mr. Vinson has the option to revert back to the religious diet at any time. I'll note there's also ER-68, that's an IRS health coverage form, which Mr. Vinson refers to in a declaration at ER-35. And then at ER-44, there's Mr. Vinson's statement that a PA licensed that, that's the provider that recommended the health diet, told him to stop eating chips and cookies. So the inferences that Mr. Vinson requires, that there is indeed a diagnosis of hypertension, that the diet is indeed nutritionally inadequate for his medical needs, those inferences become unreasonable when we start considering some of the inconsistencies in the ask. So without focusing on the sincerity so far as what are his religious beliefs, we can give him that in the relupa posture. It's very important to consider some of the dirt that gets kicked up, or the cloud around what does this guy really believe, what's he really asking for, because that has been a moving target throughout the litigation. So you're correct, Your Honor, to point out that... Was he represented in the district court? No. So he's only been represented on appeal. Only on appeal. I understand opposing counsel, in their briefing, they've offered to stay on through trial. Maybe can help sort out some of these issues on remand, if that's what happens. But I see my time is up, Your Honors. So I would conclude by asking this court to affirm the dismissal of Mr. Vinson's claims. Just briefly, Your Honors, I want to start where my colleague left off, and that's Mr. Vinson's medical needs. Remember that the defendants here are the moving party. It's their burden. Mr. Vinson established that he was prescribed the metabolic diet, the so-called medical diet. As this court knows from its deliberate indifference to jurisprudence, Mr. Vinson is a prisoner. He can't get second and third opinions on demand. He can't order whatever tests he chooses. He takes his medical provider's advice as given. There's no evidence on the record to suggest that Mr. Vinson's health claims are untrue. The only evidence is his sworn testimony. At the summary judgment stage, that has to be believed. Second, I want to go back to the question of the prison's burden and back to the question of accommodating what the defendants describe in their briefing as the personal tastes of every adherent. That's simply not true. A ruling in Mr. Vinson's case here only establishes that the record that they assembled here was insufficient. It says nothing about the record that they could assemble in a future case. If they want to talk about burden, they can shut this down at summary judgment in a future case. And if it gets past that, that's what trials are for. Unless there are further questions from the panel, I'll yield the balance of my time. Okay. Thank you very much. Thank both sides for your helpful argument. Before we finish, I would like to point out that Mr. Brekker is doing this pro bono as part of our pro bono program. We very much appreciate that. It is very helpful for the court and we thank you. I'll thank you, but you're getting paid. And my thanks have nothing to do with the merits of the case. Thank you very much. Yes, but as a former state employee, probably not enough. Okay. Thank both sides.
judges: W. Fletcher, Bybee, Watford